Ruffíií, J.
The Counsel foi the Plaintiff has insisted, that as the note was endorsed by the Defendant without any valuable consideration, and merely for the accommodation of Anderson, the maker, and to give Anderson credit with the Plaintiff, who received the note with knowledge that it had been endorsed with such intent, there was no necessity for notice of non-payment to be given to the Defendant. I am of a dlffereht opinion. Whatever may be the rule with respect to bills of exchange, where the drawer hds no effects in the hands of the drawee, I think, that in this respect, thé law with regard to promissory notes, is otherwise. The difference arises from the forms of the undertakings. The cases relied on for the Plaintiff, are, one from 1 Esp. Rep. 302, and De Best v. Atkinson, 2 H. Bl. 336. If the former be law, it is very dis-tinguishabie from this case. There, the Defendant, at the tune of endorsing, expected to pay the note, and received the funds from, the maker to do it with. But the latter authority has been chiefly pressed, and is a cáSe that has been often urged on this point. It, too, is unlike the case before us. There, the insolvency of the maker was known to all the parties, at the time of making and endorsing the note; and the Opinion of the Chief Justice is founded on that circumstance. But if it were expressly in point, the authority of it would not perhaps be entirely admitted. In a short time after that decision, the doctrine of it came again tinder consideration, in Nicholson v. Douthil,‡ and was, at least, shaken, if not overruled.
*75 In this last case, the endorsement was made in execution of a previous agreement of the endorser to guarantee a debt of the maker, whose affairs were known at the time to be embarrassed, and who became insolvent before the noft fell due. When the note became payable, the endorser knew that the maker could not pay it, and the im - pression of all parties was, that the endorser was to pay it. In this case, strong as it was against the endorser, and great as the apparent justice of making him liable Was, the Court admitted the distinction between a bill drawn without funds or credit, and a promissory note of an insolvent maker—;as to which latter, the rule is laid down, that notice of dishonour must in all gases be given» I believe this law has been considered as settled ever since, and£thatnotice has in no case been dispensed with, unless perhaps it was on the express point of De Best v. Atkinson, that is, where the insolvency of the maker was known to all parties at the time of endorsement. And it may be doubted, whether even that exception would be now allowed. For my own part, I cannot perceive, either in common sense, or in the nature of an engagement of an endorser, any reason why an endorser, who has had no benefit, and who accommodated with his credit the maker, to whom all the value went, should- not be entitled to the strictest notice. But this case does not come within even the weakest of the foregoing authorities. Here is no connection between the maker and endorser. There was no understanding that 31'Lean was to pay in the first resort. On the contrary, he was astonished when he understood that Anderson had not paid ; and so far from there being an insolvency of the maker, at the time of making or endorsing the note, or before or when it fell due, the case states, that asíate as August and September, 1812, he had visible estate to the value of 6,000 dr $7,000. How, then, can it be supposed, that the Defendant was considered as primarily liable to Smith for the pavment of this *76 note? All the acts of the Plaintiff falsify such a presumption, as well as the condition of the maker when the note was made and fell due. When the note became payable, the Plaintiff wanted his money. To whom did he apply? To Anderson. Upon whose request did he give further indulgence ? Anderson's. And what was the inducement to forbear ? Anderson's promise to make payment in a few days, as well as an unwillingness to affect his credit by protesting at Bank, where, as Anderson, told him, there were no funds to meet the note. Indeed there could be no reason for M'Lean to undertake an immediate liability—there was no necessity to the Plaintiff that he should pay the note—the maker was well able to dp it himself. On the particular circumstances, therefore, there is no hardship to the Plaintiff; but there would be great hardship on M'Lean to dispense with a notice, which if it had been given to him, might, and probably would have enabled him to save himself out of Anderson's effects. Regarding this point of the case, therefore, according to the particular facts, or testing it by the general principles of the law, I am clearly of opinion, that the Defendant was entitled to strict notice of non-payment by the maker of the note.
But it is further contended, that the conversation of the Defendant with the Plaintiff’s agent, as stated in the case, amounted to a waiver of notice. I do not see any reason why it should. He certainly does not expressly waive it, and I cannot perceive why we should imply it.. But if he had expressly waived the want of notice, and even made a new promise, I do not know tfyat the Plaintiff could have recovered, either on the count on the endorsement, or on the new promise. But there is no separate count on the promise. Indeed, according to my opinion already stated, the Defendant h&d been previously discharged. Would not his promise, therefore, be nudum pactum and void ? However, I do not say how I would think on that point, *77 being of opinion that there is nothing like a promise or waiver of notice in the case stated.
There is also another question which was not touched in the argument, and is against the Plaintiff in my Opinion. The note was made payable at the State Bank. The holder of a bill with a special acceptance, payable at a particular place, must present it there, when it falls due; otherwise the drawer is discharged.* As between the' holder and endorser, a promissory note payable at a particular place, is quo ad hoc, precisely like a bill with a special acceptance, as above, as between the holder and drawer. It is a part of the contract, that the note should be presented at Bank. Here, indeed, Anderson dispensed with such presentment. But that shall not affect M'Lean. His contract is, that payment of the note should be (le-manded at the Bank. How can we say, that Anderson would not have found means to discharge the note at any sacrifice, rather than suffer a public dishonour of his note by a protest at Bank ? Indeed, such a consideration might have induced the Defendant originally to have the note made payable at Bank. Be that as it may, the agreement was on special terms, and those terms must be complied with by the Plaintiff, before he seeks any remedy against the Defendant,
I agree, therefore, with the Court below, upon all these points, and think the verdict was right. It is unnecessary for me to say any thing on the other questions respecting the authority of the Attorney to strike out the Defendant’s endorsement, or the effect of such striking out, being in favour of the Defendant on the other grounds.
Sea well, J.
The striking out the endorsement by an authorised holder of the note, not being by mistake, but because it stood in the way of a suit he was prosecuting, by the directions and for the benefit of the Plain *78 tiff, must forever exonerate the endorser from all liability-F°r what purpose was it stricken out ? Was it that the bill was still to retain the qualities of one endorsed ? Surely not. It was to place it in the same situation it ■would have stood if no endorsement had ever been mad?, and this the rightful holder was competent to do ; for the endorsement was for his benefit—he might fill it up with what he pleased, either his own name, or that of his principal, or might stfike it out as he has done. There can be no foundation for saying the Attorney^ had no authority ; for if he was the authorised folder of the note to bring suit, and in bringing the suit, he did any thing within the scope of such acts as belong to the office of an. Attorney to perform, the act is as binding on the principal, as if done by hijpself: For would it be contended, that an endorsement could pot be struck opt by the Attorney of record ; but that the Court must require the principal to be personally present, giving his assent ? The universal course of practice to the contrary, is a sufficient answer to such a question. If the Plaintiff has lost any benefit by the act, he must bear it, as he was entitled to all the advantage which might have resulted from it.
The case states the endorser to be a mere security. What would a Court of Equity say, to a bill to set up a bond agjainst one, where the obligation had been intentionally cancelled by the agent of the person beneficially interested l It would say, being discharged at law, not by accident or mistake, there is no equity to revive it. You had the right and power to treat it as as you pleased, and you have exercised it; but having repented on being disappointed in 37our expectations, there is no reason to take from such security a defence, which you have either generously or indiscreetly given him. In this case, the Defendant is only bound by a legal tie—the endorsement; that being stricken out, he stands as another individual; and the Law will never raise an implied promise, where *79 á Court of Equity would refuse its assistance—both are governed by the same equitable rules,
I concur with. .Brother Ruffin also, as to the other point.

 2 H. Bl. 609.

 7 East’s Rep. 385.